Daniel E. Winfree
Corinne M. Vorenkamp
Winfree Law Office, APC
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701
Phone: (907) 451-6500
Facsimile: (907) 451-6510
e-mail: dan.winfree@winfreelaw.com
       corinne.vorenkamp@winfreelaw.com

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 16 PM 3: 39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIVE VILLAGE OF FORT YUKON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| INTERIOR REGIONAL HOUSING | ) |
| AUTHORITY, | ) |
| | ) |
| Defendant. | ) |
| | ) Case No. F00-0038 CV (JWS) |

## IRHA'S REPLY TO NVFY'S OPPOSITION TO MOTION FOR RECONSIDERATION ON IMPLIED RIGHT OF ACTION

## I.    INTRODUCTION.

Before the Court is Defendant Interior Regional Housing Authority's ("IRHA's") motion

for reconsideration of the Court's March 20, 2003, ruling that Plaintiff Native Village of Fort

Yukon ("NVFY") could sustain a lawsuit directly against IRHA under the Native American

Housing Assistance and Self-Determination Act ("NAHASDA").  NVFY has opposed

reconsideration of the court's ruling on the implied right of action, and additionally states three

different grounds on which NVFY contends it may proceed directly against IRHA: 1) that there

is an express right of action against IRHA under NAHASDA; 2) that it may sue IRHA under the

tribal co-plaintiff doctrine; and 3) that the Court "may hear the matter pursuant to the



Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

Administrative Procedures Act ["the APA"]."[1]

With respect to the implied right of action, NVFY's attempts to distinguish this case from the Ninth Circuit's recent ruling in *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1095 (9th Cir. 2005), are unavailing. The *San Carlos Apache Tribe* decision makes clear that the absence of a clear Congressional intent to allow individuals (or tribes) to sue directly, the delegation of specific statutory enforcement to the head of a federal agency (rather than an individual or tribe), and the availability of an enforcement mechanism through the Administrative Procedures Act ("the APA"), all preclude any other right of action.

Moreover, NVFY altogether ignores the other case primarily relied on by IRHA in its reconsideration motion, *City of Rancho Palos Verdes, California v. Abrams*, 125 S.Ct. 1453 (March 22, 2005), in which the Supreme Court earlier this year reiterated that where a statute limits relief in ways that other potential actions would not, there can be no private cause of action if allowing a plaintiff to proceed "would distort the scheme of . . . judicial review and limited remedies created by [the statute]."[2] Under these holdings, NVFY cannot proceed on a private right of action claim under NAHASDA.

As for NVFY's alternative bases on which it contends it may bring this action, they are not properly before the Court as they exceed the scope of IRHA's motion. Even if considered, however, these arguments are not persuasive. The Court already has rejected, at least implicitly, an express right of action under NAHASDA. The co-plaintiff doctrine is entirely inapplicable, as discussed below, and the APA applies only to actions brought against the United States.

---

[1] *IRHA's Opposition to Motion for Reconsideration*, pp. 1-2.

[2] *Abrams*, ___ U.S. ___, 125 S.Ct. 1453, 1458 (2005).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510



For these reasons, and because, in light of recent decisions clarifying the doctrine of implied causes of action, it now is clear that there is no private right of action under NAHASDA, IRHA's original motion for summary judgment on the implied right of action should be granted.

## II.    DISCUSSION AND LEGAL AUTHORITY.[3]

### A.    THERE IS NO IMPLIED RIGHT OF ACTION UNDER NAHASDA.

Although this Court ruled early on during this litigation that NVFY had an implied right of action against IRHA under NAHASDA, recent controlling decisions substantially undermine the Court's original holding.  As discussed in IRHA's Motion for Reconsideration, under the rulings in *San Carlos Apache Tribe v. United States* and *City of Rancho Palos Verdes v. Abrams,* a private right of action cannot be implied in the absence of clear Congressional intent.  These cases indicate that the parameters for finding an implied right of action have narrowed, or at least are narrower than might have appeared under earlier precedent.

These cases do not turn on whether the would-be plaintiff is an Indian tribe, but rather clarify that where a statute provides one means of enforcement, *however limited that enforcement mechanism may be,* courts should not impute an independent cause of action absent clear Congressional intent to allow another enforcement mechanism to co-exist.[4]

There is a second aspect to the apparent change in recent law as well, also addressed in IRHA's motion for reconsideration, which specifically concerns private rights of action for tribes

---

[3] Resolution of this motion is not dependent on resolving any underlying factual dispute between the parties, but rather involves an issue of law based on NAHASDA and controlling precedent on the private right of action doctrine.  Accordingly, NVFY's "Background" section of its opposition is irrelevant, and thus IRHA, for purposes of this motion only and without waiving any future objection(s), does not address NVFY's allegations of fact.

[4] *See City of Rancho Palos Verdes,* 125 S.Ct. at 1548-1562; *San Carlos Apache Tribe,* 417 F.3d at 1095, 1099.



Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

and/or Indians. This second aspect has to do with the idea that private rights of action should be liberally construed for Indians, due to the United States' trust responsibilities to Indians and tribes. Although at one time that may have been true, recent decisions substantially undercut any continuing legitimacy of that claim.

For example, in *Skokomish Indian Tribe v. United States,* 410 F.3d 506, 514-16 (9th Cir. 2005), the Court of Appeals rejected an Indian tribe's § 1983 claims. The dissent strongly disagreed, based in large part on the unique canons of construction for Indian treaties, but failed to convince the majority of the enduring applicability of those canons to the determination of whether a tribe has a private right of action to enforce its rights.[5] Similarly, in *San Carlos Apache Tribe v. United States*, 272 F.Supp.2d 860, 895 (D. Ariz. 2003), the lower court observed that "[t]he United States discharges its general fiduciary obligations to an Indian Tribe by complying with generally applicable regulations and statutes."[6]

These cases heavily undercut this Court's earlier ruling on the implied right of action. Moreover, the case largely relied on by this Court in reaching its initial implied right of action decision, *Dewakuku v. Martinez,* 107 F.Supp.2d 1117 (D. Ariz. 2000), was overturned and is inconsistent with current controlling law.[7]

NVFY does not squarely address any of IRHA's substantive arguments for

---

[5] *See Skokomish,* 410 F.3d at 523-24, 528-30 (Berzon, J., dissenting).

[6] 272 F.Supp.2d at 895 (citations omitted); *aff'd* at 417 F.3d 1091.

[7] *See Dewakuku v. Martinez* (*Dewakuku II),* 271 F.3d 1031 (9th Cir. 2001) (overruling *Dewakaku v. Cuomo* (*Dewakuku I),* 107 F. Supp.2d 1117 (D. Ariz. 2000)). In *Dewakuku II,* the Court of Appeals rejected the lower court's reliance on the unique trust relationship between Indians and the federal government as a basis for implying a cause of action. 271 F.3d at 1040 (Congress' "high hopes [for HUD services to Indian families] ... do not amount to the creation of an implied private cause of action ....").

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

reconsideration, and indeed ignores all of the cited cases but *San Carlos Apache Tribe*. As for

*San Carlos*, NVFY attempts only to distinguish it by emphasizing that tribes have express

oversight authority under NAHASDA, and that NAHASDA "was enacted for the benefit of

Indian tribes and Indian people because of their status as Indians."[8]  However, as noted, these

two faulty premises are precisely what recent decisions have emphasized do not create a private

right of action.

The fact that NAHASDA authorizes some oversight responsibility by tribes, but

expressly limits their role and instead delegates all enforcement power to HUD, substantially

undermines NVFY's claim that there is a private right of action under which NVFY can trump

HUD and independently (and conflictingly) seek to enforce NAHASDA's provisions as it sees fit

in a separate civil action.[9]  Moreover, the fact that NAHASDA was enacted for the benefit of

Indians clearly does not in itself create a private right of action in favor of a tribe so that it can

sue another Indian organization.[10]

In sum, recent decisions make clear that there is no private right of action where, as here,

there is a specific enforcement scheme designed by regulation and statute.

## B.    THE TRIBAL CO-PLAINTIFF DOCTRINE IS INAPPLICABLE.

In a new twist, NVFY, faced with the likely reversal of the Court's earlier decision on the

---

[8] NVFY's *Opposition to Motion for Reconsideration,* pp. 12-13.

[9] *See San Carlos Apache Tribe v. United States*, 417 F.3d 1091 (9th Cir. 2005); *City of Rancho Palos Verdes v. Abrams,* 125 S.Ct. 1453 (March 22, 2005).

[10] *See, e.g., Skokomish Indian Tribe v. United States,* 410 F.3d 506, 514-15 (9th Cir. 2005); *Dewakuku II,* 271 F.3d at 1040 (Congress' "high hopes [for HUD services to Indian families] ... do not amount to the creation of an implied private cause of action ...."); *Solomon v. IRHA*, 313 F.3d 1194, 1205 (9th Cir. 2002) (Berzon, J., dissenting) ("The fundamental mandate to construe Indian-law statutes liberally in favor of Indians . . . does not provide a ready answer when, as here, Indian interests fall on both sides of the issue.").

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

implied right of action, now claims instead that it may proceed against IRHA under the "tribal co-plaintiff doctrine."[11]  The tribal co-plaintiff doctrine is not properly before the Court on IRHA's motion for reconsideration on the implied right of action.  Nonetheless, the tribal co-plaintiff doctrine is inapplicable, and does not provide the tribe with the basis for an independent claim against IRHA.

### 1.  NVFY Does Not Have an Ownership Interest that the United States Could Vindicate on NVFY's Behalf.

The tribal co-plaintiff doctrine only authorizes suits brought by a tribe where the United States could have brought the same action as trustee on behalf of the tribe.  Both *Agua Caliente Band of Mission Indians v. Riverside*, 442 F.2d 1184 (9th Cir. 1971), and *Moses v. Kinnear,* 490 F.2d 21 (9th Cir. 1973), relied on by NVFY, involved claims relating to tribal land that was held in trust by the United States.  The tribal co-plaintiff doctrine was found to apply because any action(s) that could be brought by the United States would be brought on behalf of the tribe, in the United States' role as the guardian of the land based on the United States' duty over "its ward Indians."[12]  Accordingly, the tribes could stand in the shoes of the United States in bringing an action on their own behalf where the United State could otherwise have done so for them.

The United States Supreme Court explained this aspect of the co-plaintiff doctrine in *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463 (1976).  The Court noted the legislative history of § 1362 indicates congressional intent "to open the federal

---

[11] This argument was not previously raised in NVFY's September 23, 2002 Opposition to IRHA's Motion for Summary Judgment/Cross-Motion for Summary Judgment.

[12] *See Moses v. Kinnear*, 490 F.2d at 25 (explaining the United States' "special interest in its ward Indians," which creates a federal policy "to protect Indians and Indian property from state taxation."); *see also Agua Caliente*, 442 F.2d at 1186 ("At the instance of the United States, as trustee, State laws taxing Indian property may be contested in the Federal District Court.") (emphasis added).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510



courts to the kind of claims that could have been brought by the United States <u>as trustee</u> . . . ."[13]

Accordingly, the Court concluded that "the legislative history [of § 1362], though by no means

dispositive, suggests that in certain respects tribes suing under this section were to be accorded

treatment similar to that of the United States <u>had it sued on [the tribe's] behalf</u>."[14]

For this reason, "[t]o whatever extent 28 U.S.C. § 1362 authorizes the Tribe to step into

the shoes of the United States, the right being enforced must be one that the United States <u>could</u>

<u>vindicate on behalf of the Tribe</u>."[15]  In *Pelt v. Utah*, 104 F.3d 1534, 1545 (10th Cir. 1996), the

Tenth Circuit Court of Appeals found that the tribe's interest under the statute at issue was

"purely limited to one of involvement in planning, no more."  Accordingly, any action that the

United States could bring to enforce the statute would not be on behalf of the tribe itself.[16]  The

*Pelt* court thus concluded that the tribe could not sue under § 1362.

Similar to *Pelt*, although NAHASDA authorizes the Attorney General to bring suit

against a NAHASDA block grant recipient, including a TDHE such as IRHA, such a suit is not

in any way one brought on behalf of the tribe itself or based on the United States' role as trustee

of tribal property.  NVFY does not have any ownership or property interest in disbursed

---

[13] *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. at 472 (emphasis added). *See also*, *Moses*, 490 F.2d at 25, n.9 ("It is clear from the legislative history of § 1362 that one of the purposes of the legislation was to permit the Tribes to initiate litigation involving issues which could have been instituted by the United States <u>as trustee</u>.") (emphasis added).

[14] *Moe*, 425 U.S. at 474 (emphasis added).

[15] *Pelt v. Utah*, 104 F.3d 1534, 1545 (10th Cir. 1996).

[16] *Id.*

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

NAHASDA block grant funds,[17] and any suit brought by the Attorney General is to enforce

NAHASDA itself, not one "[enforcing a right] that the United States can vindicate on behalf of

the Tribe."[18]

Much like the situation in *Pelt,* here, while NAHASDA provides NVFY with a right (and

responsibility) to help monitor use of NAHASDA funds distributed to IRHA on behalf of NVFY,

the tribe itself has no further rights under NAHASDA.[19]  Accordingly, NVFY cannot bring an

action under the authority of § 1362 because it does not have any property right that the United

States could vindicate on its behalf.[20]

---

[17] The lack of any property right held by the tribe over the grant funds is clear from NAHASDA'S terms. For example, if HUD identifies performance problems by the TDHE, HUD can, among other options, recommend either that the recipient reimburse the recipient's program, or recommend that the recipient redirect funds from affected activities to other eligible activities. 24 CFR § 1000.530. However, funds redirected to other activities need not be expended on behalf of the affected tribe, and the tribe does not have a right to "restitution" or any other right to recover the funds distributed to the TDHE on its behalf. Similarly, 24 CFR § 1000.536 provides that any grant funds adjusted, reduced, withdrawn, or terminated as a result of NAHASDA noncompliance will "be distributed by HUD in accordance with the next NAHASDA formula allocation." There is no requirement that funds adjusted due to noncompliance be expended on behalf of a tribe that may have been affected by a TDHE's noncompliance.

[18] *See Pelt*, 104 F.3d at 1545.  Under NAHASDA, even if the Attorney General sues under the authority of 25 U.S.C. § 1461(c)(2) and recovers funds that were expended in a manner inconsistent with NAHASDA provisions, those funds then are redistributed across the board in the next NAHASDA formula allocation, not earmarked specially for any adversely affected beneficiary or tribe. *See* 24 CFR § 1000.536.

[19] *Id.* ("The Tribe's right . . . is purely limited to one of involvement in planning, no more.")  Here, NVFY's rights under NAHASDA are expressly limited only to monitoring by ensuring that the TDHE prepares the necessary progress and audit reports. Although the tribe is responsible for ensuring that appropriate corrective action is taken in the event problems arise, what form that action will take is not up to the tribe, but instead expressly delegated to HUD alone. *See* 24 CFR § 1000.530-538.

[20] *Id.* ("[Under § 1362], the right being enforced must be one that the United States could vindicate on behalf of the Tribe.") (emphasis added).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

NVFY v. IRHA                                                                Case No. F00-0038 (JWS)
*IRHA's Reply to NVFY's Opposition to Motion for Reconsideration*                      Page 8

Moreover, the cases cited by NVFY that involve instances where the tribal co-plaintiff doctrine <u>has</u> been found to apply concern suits affecting Indian/tribal land (particularly regarding taxation and allotment issues), or lease rights over natural resources, where the Indian or tribal property interests are expressly held in trust by the United States on the Indians' or tribe's behalf.[21]  NVFY has not presented any authority to extend the co-plaintiff doctrine from cases based on the trustee relationship between the United States and tribes with respect to land and rights to natural resources, to cases where the tribe's only interest arises from its status as beneficiary to funds allocated to another Indian/Alaska Native entity (the TDHE), which alone stands in direct relationship with the United States.[22]

### 2.    The United States Cannot Sue IRHA in this Case.

Setting aside the insurmountable hurdle to the co-plaintiff doctrine that NVFY faces because it is not the beneficiary of a property interest held in trust on its behalf by the United States, NVFY also cannot proceed under § 1362 because the United States itself could not sue IRHA under NAHASDA in this matter.  NAHASDA authorizes suit only upon findings of substantial noncompliance after a recipient disregards HUD's recommendations for corrective action(s).[23]  Here, HUD has investigated, found noncompliance, and recommended corrective

---

[21] *See Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968); *Ft. Mojave Tribe v. Lafollette*, 478 F.2d 1016 (9th Cir. 1973); *Moe*, 425 U.S. 463 (1976); *Agua Caliente,* 442 F.2d 1184 (9th Cir. 1971); *Moses v. Kinnear,* 490 F.2d 21 (9th Cir. 1973); *Capitain Grande Band of Mission Indians v. Helix Irrigation Dist.*, 514 F.2d 465, 470 (9th Cir. 1975).

[22]  The United States' interests and role in acting on behalf of Indians as trustee are vastly different where the conflict involves another Indian entity.  *See, e.g., Solomon v. IRHA, supra,* n. 10, 313 F.3d at 1199 (rejecting private cause of action theory in part because "subjecting an Indian organization to an individual action for damages . . . would undermine the Indian organization's autonomy, not enhance it.")

[23] *See* 24 CFR § 1000.530(a), (b).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510



action that IRHA has fully performed. Accordingly, the matter is fully resolved and the United States could not file a civil case against IRHA; this fact also bars NVFY's § 1362 claim.

NAHASDA's regulatory scheme already has been discussed, but also is succinctly set out in HUD's September 12, 2005, letter to NVFY's counsel.[24] As explained in that letter, HUD cannot take enforcement action, including referring the matter to the Attorney General for a civil suit, until it first pursues informal action under 24 CFR § 1000.530(a).[25] After that remedial step, further action is then authorized only if the recipient fails to follow the recommended corrective action or to "pursue other corrective actions to adequately resolve the finding. . . ."[26]

Because HUD and IRHA already have resolved the underlying issues in accordance with NAHASDA, there is no basis for a civil lawsuit by the Attorney General. HUD reviewed IRHA's accounting, investigated apparent discrepancies, and recommended corrective action, all as authorized and required under NAHASDA. In turn, IRHA followed HUD's recommendation and refunded the requested amount of money. In accordance with NAHASDA's regulatory scheme, HUD's recommended corrective action stopped any further problems, mitigated any adverse effects, and will prevent recurrence.[27] There is no further action to be taken against IRHA under NAHASDA.

### 3.    Suit by NVFY is inconsistent with NAHASDA's terms.

In *Poafpybitty v. Skelly Oil Co.*, the Supreme Court noted that whether a tribe can

---

[24] *See* HUD Letter to Michael J. Walleri, dated 9/12/05 (attached to NVFY's September 29, 2005, Status Report); 24 CFR § 1000.530(a).

[25] *Id.*, p. 2.

[26] *Id.*, p. 3; 24 CFR § 1000.530(a), (b)

[27] *See* 24 CFR § 1000.530(a) (identifying the goals of the authorized corrective actions).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

proceed with suit under § 1362 also turns on whether the underlying statute or regulations at issue would prevent the tribe "from seeking judicial relief for an alleged impairment of their interests . . . ."[28] Here, there is little question that an independent suit by NVFY is irreconcilable with the remedial scheme Congress intended under NAHASDA. This is particularly true where HUD already has recovered funds from IRHA in the amount HUD deemed IRHA to have misspent for the benefit of six Fort Yukon residents whose income-eligibility could not be determined.

In *Poafpybitty*, the Supreme Court examined regulations governing the oil and gas lease at issue to determine whether, under the applicable regulations, an independent suit by the tribe would preclude judicial relief.[29] The Court found that although the United States had significant supervisory authority over the lease, there was "nothing in [the] regulatory scheme which would preclude petitioners from seeking judicial relief . . . ."[30] Moreover, the Court held that there was "nothing in the . . . regulations requiring the Indians to seek administrative action from the Government instead of instituting legal proceedings on their own."[31] The Court also found persuasive the fact that the United States had "an almost staggering problem in attempting to discharge its trust obligations," and accordingly supported the tribe's right to sue in its own capacity.[32]

Applying those same considerations here, not one of them supports NVFY's attempt to

---

[28] 390 U.S. 365, 372 (1968).

[29] *Id.*, at 372-73.

[30] *Id.*, at 373.

[31] *Id.*

[32] *Id.*, at 374.

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

independently sue IRHA under NAHASDA. Such a suit is inconsistent with NAHASDA's remedial regulatory scheme and with NAHASDA's express limitations on the tribe's rights and role in NAHASDA enforcement. NAHASDA requires tribes who identify problems with a TDHE's expenditures to ensure that appropriate <u>corrective</u> action is taken; [33] authorized corrective measures are identified under 24 CFR § 1000.530. Among those measures is a recommendation for the refund to HUD of the amount of grant funds improperly expended. This is one of the most severe corrective actions under the regulations (other actions include warnings, additional oversight, or a requirement that the recipient obtain technical assistance).[34]

NAHASA does not authorize a tribe to take independent action in the event of compliance concerns. The clear regulatory language -- which specifically identifies what a tribe can do if it identifies compliance concerns, limits the tribe's response to ensuring that corrective action is taken, and authorizes HUD (not the tribe) to determine what corrective action is appropriate -- precludes an interpretation that the tribe can pursue any different or additional enforcement mechanism. As the Supreme Court recently noted, "'the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'"[35]

Here, HUD undertook the corrective measures authorized by NAHASDA in response to notice of problems brought to its attention by NVFY. The remedial regulatory scheme was fully followed, and there are no remaining NAHASDA issues to be resolved.

Unlike the situation in *Poafpybitty v. Skelly Oil Co*, NAHASDA's regulatory scheme

---

[33] 24 CFR § 1000.510.

[34] 24 CFR § 1000.530.

[35] *City of Rancho Palos Verdes v. Abrams,* 125 S.Ct. at 1458 (quoting *Alexander v. Sandoval*, 532 U.S. 275 (2001)).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

<u>does</u> indicate that tribes themselves are precluded from seeking judicial relief.[36] The regulations also clearly require the tribe to turn to <u>HUD</u> to take corrective action, which has been accomplished here.[37] Moreover, and in stark contrast to *Poafpybitty*, this is not an instance where the United States is unable to discharge its responsibilities; to the contrary, it already has done so, in full compliance with NAHASDA.[38]

### 4.    The Co-Plaintiff Doctrine Only Authorizes Suits by Tribes When the United States Does Not Act, and Thus Does Not Apply Here, as HUD Already Has Taken Enforcement Action under NAHASDA.

As NVFY acknowledges, 28 U.S.C. § 1362 only provides jurisdiction for a tribe to sue where the United States does not take action on behalf of the tribe.[39] Here, HUD has acted, and NVFY's only complaint is that it does not like the enforcement action that HUD has taken. Under NAHASDA's express terms, however, determination of appropriate enforcement measure(s) is delegated solely to HUD. The United States already has acted, through HUD, to enforce NAHASDA, and NVFY cannot take additional action by trying to proceed against IRHA directly under a statute that the United States already has enforced.

For all of these reasons, NVFY cannot proceed under § 1362.

---

[36] 390 U.S. at 373.

[37] *Id.*; *see also* 24 CFR § 1000.510 (authorizing tribe to ensure that corrective action is taken); *compare* 24 CFR § 1000.530 (delegating administration of corrective action to HUD Secretary).

[38] *See, Poafpybitty*, 390 U.S. at 374.

[39] NVFY's *Opposition to Motion for Reconsideration*, pp. 7-8 ("28 USC § 1362 is intended to authorize Indian tribe [sic] to bring suit in federal court to protect its federally derived property rights in those situations <u>where United States [sic] declines to act</u>.") (emphasis added).

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

## C.    NVFY HAS NO EXPRESS RIGHT OF ACTION UNDER NAHASDA.

Again exceeding the scope of IRHA's reconsideration motion on the implied right of action, NVFY also contends that it possesses not an implied cause of action, but an *express* right of action under NAHASDA.[40]  NVFY unsuccessfully presented this same argument, almost word-for-word, in its original Opposition to Motion for Summary Judgment on this issue.[41]

The Court already rejected this argument when it held that NVFY could bring an *implied* right of action, which is necessarily inconsistent with a finding of an express cause of action. Because NVFY has not sought, or been granted, reconsideration of the Court's March 20, 2003, Order, the express right of action claim is not properly before the Court a second time.

Even if considered, however, the Court properly decided this issue and discounted NVFY's express cause of action claim the first time the Court reviewed it.  Although NAHASDA provides for grant beneficiaries (tribes) to oversee monitoring activities of the grant recipients (the tribally-designated housing entity, or "TDHE," – here, IRHA), the tribe's oversight role is specifically limited to "requiring the TDHE to prepare periodic progress reports . . . ."[42]  If problems are identified, the tribe's role, as NVFY admits, is only "to ensure that appropriate corrective action" is taken.[43]  NAHASDA explicitly delegates determination of the appropriate corrective action to HUD, not the tribe.[44]

---

[40] NVFY's *Opposition to Motion for Reconsideration*, pp. 5-6.

[41] *Compare id.*, *with* NVFY's September 23, 2002, *Opposition to Motion for Summary Judgment*, pp. 21-22.

[42] 24 CFR § 1000.502(b).

[43] 24 CFR § 1000.510.

[44] 24 CFR Part 1000, Subpart F ("Recipient Monitoring, Oversight and Accountability") outlines the provisions for NAHASDA oversight. If problems are identified, HUD is to take

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

Thus, NAHASDA does <u>not</u> authorize a private suit by a tribe against a TDHE, but rather <u>expressly</u> <u>limits</u> the tribe's role to ensuring that HUD takes appropriate action if HUD finds either performance problems or substantial noncompliance. In other words, NAHASDA authorizes only what already has occurred here – tribal review of the TDHE's accounting and audit reports, referral of any concerns or complaints to HUD, investigation by HUD, and appropriate remedial and corrective action where HUD finds that the problems are simply performance problems that do not amount to "substantial noncompliance" under 24 CFR § 1000.538.

Far from creating an express private right of action in federal court between a tribe and a TDHE, NAHASDA unequivocally <u>limits</u> the tribe's role to monitoring the accounting/auditing reports, and referring complaints to HUD for further investigation and determination of whether corrective action is warranted, and if so, the appropriate form of such action.

For these reasons, NVFY's contention that NAHASDA creates an express private right of action is misplaced.

**D.    THE APA ONLY AUTHORIZES SUITS AGAINST THE U.S.**

Lastly, NVFY indicates it may proceed under the Administrative Procedures Act (APA), and has moved to amend its complaint to add HUD's Alaska Office of Native American Programs (AONAP as a defendant. However, as NVFY concedes, the APA only authorizes

---

informal "corrective and remedial action(s)" to: 1) prevent continuance of performance problems; 2) mitigate any adverse effects or consequences; and 3) deter recurrence of the same or similar problems. 24 CFR § 1000.530(a). The authorized actions include recommending that the recipient reimburse the recipient's program account in the amount improperly expended. *Id.*, (a)(5). Further formal action is allowed *only* if HUD finds substantial noncompliance with any HUD provision, including failure to address identified performance problems under 24 CFR § 1000.530(a). *See* 24 CFR § 1000.538(a); 24 CFR § 1000.530(b).

<u>NVFY v. IRHA</u>                                                              Case No. F00-0038 (JWS)
*IRHA's Reply to NVFY's Opposition to Motion for Reconsideration*              Page 15

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510

review of federal agency actions.[45]  The APA does not provide any basis for suit against IRHA. As IRHA has set out in its opposition to NVFY's motion to amend its complaint, the motion to amend should be denied.  NVFY's remedy, if any, against HUD for HUD's enforcement actions against IRHA is a separate matter from this lawsuit, and should not be heard in the same action.

## III.    CONCLUSION.

For these reasons, IRHA requests that the Court reverse its March 20, 2003, denial of summary judgment and instead grant summary judgment to IRHA.

Dated at Fairbanks, Alaska this _16_ day of December, 2005.

WINFREE LAW OFFICE
A Professional Corporation
For Interior Regional Housing Authority

Corinne M. Vorenkamp
Alaska Bar No. 0008065

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the _16th_ day of December, 2005, a true and complete copy of the foregoing was served by U.S. Mail on:

Michael Walleri
330 Wendell Street, Suite E,
Fairbanks, Alaska 99701

Winfree Law Office

Winfree Law Office
A Professional Corporation
301 Cushman Street, Suite 200
Fairbanks, Alaska 99701-4629
Telephone 907.451.6500
Facsimile 907.451.6510



---

[45] NVFY's *Opposition to Motion for Reconsideration,* pp. 13-14.