IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIVE VILLAGE OF FORT YUKON,<br>                    Plaintiff,<br><br>vs.<br><br>INTERIOR REGIONAL HOUSING AUTHORITY,<br>                    Defendant. | **MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION ORDER OF DECEMBER 20, 2005**<br><br>Case No. F00-0038 CV (JWS) |

Pursuant to FRCP 60(b)(6) the Native Village of Fort Yukon (NVFY) seeks reconsideration of the Court's order of December 20, 2005 granting Interior Regional Housing Authority's motion for reconsideration and holding that a tribe does not have a cause of action to enforce the terms of NAHASDA against a tribal housing authority. The motion is sought in light of intervening case law: i.e. *Watson v Weeks*, No. 04-35704 (9th Cir., February 8, 2006),[1] a decision of the Ninth Circuit Court of Appeals which clarifies that a private cause of action does exist to enforce the terms of statutes implementing cooperative federalism, such as NAHASDA.

---

[1] 2006 U.S. App. LEXIS 3011

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

I.      BACKGROUND.

This is a claim brought by a federally recognized Indian tribe (Native Village of Fort Yukon, hereinafter referred to as "Tribe") against a tribally designated housing authority (Interior Regional Housing Authority, hereinafter referred to as "Authority") to recover $1,272,2470.08 of misappropriated funds from the Tribes 1998, 1999, and 2000 tribal allocations under the Native American Housing Assistance and Self-Determination Act.[2] ("NAHASDA").  As discussed below, it is undisputed that the Housing Authority misappropriated funding; rather the only question in this regard relates to how much money the Housing Authority misappropriated, and whether the tribe has a remedy.

a)      **The Statutory Framework.**  NAHASDA establishes a cooperative federal-tribal program for the provision of low-income housing services to tribal members.  Funds are provided to tribes in block grants (a.k.a. tribal allocations) to enable tribes to "carry out affordable housing activities", which is defined as housing services to low-income families.[3]  Affordable housing activities include improvements to existing homes of low-income families.  The amount of a tribe's

---

[2] *See generally* 25 USC §4101 et. seq.
[3] 25 USC § 4111; 25 USC § 4103(2); 25 USC § 4135

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

block grant/tribal allocation is annually determined under an allocation formula.[4] A tribe may either administer the housing program itself, or may designate a Housing Authority to implement the Indian Housing Plan on its behalf.[5] If a tribe names a tribal housing authority to operate its program, the tribe must ensure long-term compliance with the provisions of this NAHASDA, including providing for enforcement of NAHASDA by the tribe and remedies for remedies for the breach of such provisions.[6] The tribe is to monitor compliance with NAHASDA by the tribal housing authority.[7]

In order to operate a program, a tribe or tribal housing authority on behalf of a tribe, must submit an Indian Housing Plan (IHP) to HUD prior to undertaking housing projects.[8] Housing projects must comply with the IHP.[9] NAHASDA funds

---

[4] 25 USC §§ 4151 & 4152.
[5] 25 USC §4112 A statute allows a tribe to name a "tribally designated housing entity" [TDHE] to carry out affordable housing projects on its behalf. The statute contains a specific provision allowing state chartered regional housing authorities, such as Interior Regional Housing Authority, to serve as a TDHE. See 25 USC §4103 (21)(B)(2)
[6] 25 USC §4163
[7] 24 CFR §1000. 501
[8] 25 USC §4112
[9] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

can only be used to assist low-income families.[10]  Before providing any services to any tribal member, the housing authority must determine that the household is "low income".[11]

      **b)**    **Summary Factual Background and Tribal Claims.** In 1998 through 2000, Fort Yukon's tribal funding allocation under NAHASDA was over $1.2 million.[12]  As the record in this case illustrates, it is largely undisputed that IRHA did not comply with the Indian Housing Plans for these years, failed to determine eligibility of tribal members prior to providing services, provided services to persons who were not low-income, failed to account for expenditures, and incurred substantial cost over runs.   It is not substantially disputed, at this point, that IRHA's operation of the program violated several aspects of the NAHASDA.[13]

---

[10] 25 USC 4135 The statute does allow certain waivers that would allow a certain amount of a grant to be provided to non-low income persons under certain circumstances.

[11] 25 USC § 4135(a)(1)(C).

[12] The parties agree that in 1998 and 1999 Fort Yukon's allocations were respectively $ 441,8764 and $ 398,644.  The parties agree that in 2000, the tribes housing allocation was at least $371,976.

[13] These motions arise in the context of motions to dismiss, and , therefore, allegations of fact are considered to be true. *ASW v Oregon, 424 F.3d 970 (9th Cir., 2005)*  However, IRHA's operation of the project have been the subject of a HUD Inspector General investigation, tribal audit procedures, and HUD administrative review. All of these reviews revealed serious violations of NAHASDA and other government regulations.  IRHA has never seriously argued that it did not violate

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

As the litigation and HUD reviews progressed, the tribe's claims have clarified. The Native Village of Fort Yukon is seeking to enforce 25 USC § 4111(g), which states that

> (A)mounts provided under a grant under this section may be used only for affordable housing activities under subchapter II of this chapter that are consistent with an Indian housing plan approved under section 4113 of this title.

The section has only two (2) requirements: i.e. that the funds be expended 1) on "affordable housing,[14] and 2) consistent with the IHP. Specifically, the tribe is seeking $1,272,2470.08 comprised of

- $110,446.61 for services provided to families determined by HUD as ineligible for NAHASDA services (i.e. non-low income families)

---

NAHASDA. Consequently, the only issues in dispute between the parties are the amount of money actually misappropriated, and whether the tribe has legal remedy and recourse against IRHA for the misappropriation.

[14] In this regard, 25 USC § 4135 (which is part of subchapter II) imposes a "low-income requirement". Hence, the tribe is also seeking to enforce the terms of §4135 of NAHASDA. The term affordable housing is defined at 25 USC § 4103 (2) which incorporates all subchapter II requirements into the definition of affordable housing activities.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Memo: Motion Reconsideration*                                              Page 5 of 14
*Native Village of Fort Yukon v IRHA, Case No. F00-0038 (JKS)*

- $429,239.55 for expenses incurred in providing services to families determined by the tribe as ineligible for NAHASDA services (i.e. non-low income families),[15]

- $371,976 (i.e. the 2000 tribal allocation) that was expended on projects other than those approved in the 2000 IHP,[16] and

- $360,808.65 of questioned costs in the operation of the projects.[17]

  **c)**   **Prior Procedural History.** This case was originally filed in 2000, but has largely been stayed pending HUD agency review under the principal of primary jurisdiction.[18] The present issue—i.e. whether the tribe has a cognizable cause of action to enforce the terms of NAHASDA ---has been before the Court three (3) previous times. On two occasions, the Court has ruled that the Tribe has a

---

[15] This amount includes amounts for services to families that may have been income eligible, but IRHA failed to determine eligibility prior to the provision of services in violation of 25 USC § 4135(a)(1)(C), which is a provision of subchapter II, and therefore incorporated within the definition of "affordable housing activity". See 25 USC § 4103 (2). Hence, the tribe is also seeking to enforce the terms of § 4135(a)(1)(C).

[16] The 2000 tribal allocation was applied by IRHA to cover cost overruns on the 1998 and 1999 programs, rather than to the projects specified in the 2000 IHP.

[17] All IHP's certify that IRHA would properly account for funds in accordance with OMB Cir. A-102. The tribe contends that IRHA failed to properly account in a manner required. The HUD Inspector General's Office found that IRHA failed to properly account for funds as required by NAHASDA and the IHP's, but disagrees with the tribe as to the amount of funds that were improperly accounted for.

[18] Orders at Docket 74 (March 20, 2003) and 103 (February 9, 2005)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

private cause of action to enforce the terms of NAHASDA relative to IRHA.[19] On September 28, 2005, IRHA moved to reconsider the prior two orders in light of the decision in *San Carlos Apache Tribe v United States*, 417 F.3d 1091 (9th Cir. 2005), which had been decided on August 9, 2005. IRHA characterized the *San Carlos Apache Tribe* decision as holding that the Ninth Circuit Court of Appeal has departed from two other circuits and rejected the principle Indian tribes have a private right of action claim to enforce a federal statute. On December 12, 2005, this Court reversed its prior decisions and ruled that a tribe does not have a private cause of action to enforce NAHASDA.[20]

### III. THE INTERVENING DECISION IN *WATSON v WEEKS* CLARIFIES THAT A CAUSE OF ACTION EXISTS.

The recent holding of the Ninth Circuit in *Watson v Weeks* clarifies that the Court was actually right the first two times it ruled on this matter. In that case, the Court held that a provision of the Medicaid Act which requires states to provide nursing facility services to eligible individuals gives rise to a private cause of action to enforce the statute, while another provision which requires states to use

---

[19] Orders at Docket 74 (March 20, 2003) and 103 (February 9, 2005)
[20] Docket 127

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Memo: Motion Reconsideration*                                                                 Page 7 of 14
*Native Village of Fort Yukon v IRHA, Case No. F00-0038 (JKS)*

reasonable standards in setting Medicaid eligibility does not.  The decision is particularly helpful in distinguishing when a private cause of action is cognizable.

*Watson v Weeks* involves the Medicaid program, which is a cooperative Federal-State program providing medical assistance to low-income people.  As described in the opinion, the federal government provides funds to states, which may expend the funds on low-income medical services under certain conditions.  Those conditions include the requirement that the State submit an approved Medicaid plan and that the state comply with the approved plan and the requirements of the federal Medicaid statutes.

The Court described the federal programs as follows: "The "medical assistance" provided by a state plan must include certain minimum services to "all individuals" who are financially eligible."[21] Additionally, "A state plan must also provide "reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan…"[22] Finally, the Court further explained

> "A related provision of Medicaid is the Home and Community Based Services ("community-based services") waiver program. A community-based services waiver permits a state plan to include as "medical assistance" certain home and

---

[21] Slip Op., at 4
[22] Slip Op., at 4-5

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Memo: Motion Reconsideration*                                                                                         Page 8 of 14
*Native Village of Fort Yukon v IRHA, Case No. F00-0038 (JKS)*

community-based services rendered to individuals who otherwise would require nursing facility care that could be reimbursable under the state plan.[23]

Oregon classified eligible individuals into 17 service priority levels, and used the waiver to limit and eliminate services to eligible persons within 8 service levels (i.e. 10 through 17), thereby terminating services to about 10,485 eligible persons. The *Watson* Plaintiffs brought three (3) claims on behalf of these persons alleging that Oregon violated statutory provisions that 1) require state Medicaid plans to provide nursing facility services to eligible individuals; 2) requiring "reasonable standards" for determining eligibility; and 3) by assessing Plaintiffs' medical need for nursing facility services using agents who lacked the necessary professional qualifications and training and who employed subjective and inaccurate judgments. The District court dismissed all claims holding that the claims did not state a cognizable cause of action.

On appeal, the Ninth Circuit considered these claims in light of *Wilder v. Virginia Hospital Ass'n*,[24] and *Suter v. Artist M.*.[25] The Court explained that *Wilder* concerned a statutory provision of federal law implementing a federal-state

---

[23] Id.
[24] 496 U.S. 498, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990)
[25] 503 U.S. 347, 112 S. Ct. 1360, 118 L. Ed. 2d 1 (1992)
**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

cooperative program that required a state plan to provide "reasonable and adequate" reimbursement to health facilities. The Court found Congressional intent to benefit such facilities "was unmistakable."[26] As a result, in *Wilder* a cause of action was found to exist. In contrast, the *Suter* Court found no cause of action to enforce a "reasonable efforts" provision of the Adoption Assistance and Child Welfare Act of 1980, another federal-state cooperative program. The Ninth Circuit Court noted that the two cases were distinguishable because the "reasonable efforts" standard considered in *Suter* "imposed only 'a rather generalized duty' on the state and conferred no individualized rights."[27] The Court in *Watson v Weeks,* explained the distinction as follows:

> The *Suter* Court explained that *Wilder*'s term "reasonable and adequate" was accompanied by sufficiently detailed guidance to a court that it could be judicially enforced. By contrast, the statutory term in *Suter*, "reasonable efforts," provided no such guidance and thus a court could not readily ascertain the outlines of the alleged right.[28]

The Ninth Circuit holding in *Watson v Weeks* provides valuable guidance when considering the cognizability of a cause of action under federal cooperative programs with states and tribes. Simply stated, the inquiry must focus upon

---

[26] 496 U.S., at 510.
[27] *Watson v Weeks, Slip Op. at 13*
[28] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

whether the statutory provisions provide "sufficiently detailed guidance to a court that it could be judicially enforced." The answer in this case is clearly yes.

The issues presented in the instant case arise in context of a federal cooperative program similar to that described in *Watson v Weeks*. The only difference is that *Watson* arose in the context of federal-state cooperation, while the present action arises in the context of federal-tribal cooperation. The principals are near identical, and the guidance of the Court in *Watson v Weeks* controls.

As in *Watson*, NAHASDA provides inter-governmental grants in aid conditioned upon submission and agency approval of a plan. The contents and the minimum requirements of the plan are set out in statute. But as the Court recently explained in *Watson v Weeks*, judicial enforcement of these statutory standards is not to be assumed and different standards within the same statute may be treated differently when considering whether a cognizable enforceable right exists. Rather, the question hinges upon whether the statute sought to be enforced provides "sufficiently detailed guidance to a court that it could be judicially enforced."

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

NAHASDA clearly restricts services to people within clearly defined income limits.  There is little question that the statute requires a housing authority to determine income eligibility before providing services. The plan must identify planned projects and that the housing authority may only expend funds on the approved projects. There is little question that NAHASDA provides "sufficiently detailed guidance to a court" as to whether an expenditure was proper or not. Hence, under *Watson v Weeks*, the tribes claims give rise to an enforceable cause of action

IRHA previously relied upon *San Carlos Apache Tribe v United States, 417 F.3d 1091 (9th Cir. 2005),* however, that case did not involve a program of cooperative federalism. That case involved claims seeking to enforce the National Historic Preservation Act ("NHPA").   But NHPA is not a federal-tribal cooperative program. It merely regulates federal regulatory agencies.  Indeed, tribes are not grantees under NHPA.  Tribe are not granted any powers under the NHPA.  Tribes  have no regulatory role in NHPA's administration.  Simply stated, NHPA conferrs no rights upon a tribe. As the *San Carlos Apache Tribe Court* noted,

> statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.[29]

---

[29] quoting from *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting  *California v. Sierra Club*, 451 U.S. 287, 294  (1981)).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In contrast, NAHASDA was clearly intended to benefit Indian tribes and confer upon them certain rights. Indeed, the statute clearly identifies the tribes as the beneficiary of the legislation, and defines "grant beneficiary" as "the Indian tribe or tribes on behalf of which a grant is made under this chapter to a recipient."[30] NAHSDA grants are made "<u>on behalf</u> of Indian tribes to carry out affordable housing activities."[31] The tribes have substantial powers to design their programs within statutory parameters. Indeed, once Congress makes appropriations for NAHASDA grants, the statute sets out strict formulas for the allocation of such funds to the tribes.[32]

NAHASDA is a federal-tribal cooperative program and is governed by the principles set out in *Watson v Weeks*. It is clear that NAHASDA was intended to confer a benefit upon Indian tribes, and that it contains "sufficiently detailed guidance to a court that it could be judicially enforced." Applying those principles to the present case, *Watson v Weeks* clearly holds that a tribe has the right to judicially enforce the terms of NAHASDA against a tribal housing authority.

---

[30] 25 USC 4103(7)
[31] 25 USC §4111 (a)
[32] 25 USC §§ 4151 & 4152.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Memo: Motion Reconsideration*
*Native Village of Fort Yukon v IRHA, Case No. F00-0038 (JKS)*

Page 13 of 14

## IV. CONCLUSION

The Court should reconsider and vacate the order at Docket 127 and reinstate the Orders at Docket 74 and 103, holding that a tribe has a cognizable cause of action to enforce the terms of NAHASDA with regard to its tribal housing authority.

Dated: February 13, 2006

                                                MICHAEL J. WALLERI

                                                s/ Michael J. Walleri
                                                AK. Bar No. 7906060
                                                Attorney for Plaintiff

Certificate of Service
I hereby certify that under penalty of perjury that a true and
Correct copy of the foregoing was sent to the following counsel
of record on February 13, 2006 via ECF to:
    Mr. Daniel Winfree
    Winfree Law Offices
    301 Cushman St. Suite 200
    Fairbanks, Alaska 99701
 s/ Michael J. Walleri

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite C
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725